O

# United States District Court
# Central District of California

| | |
|---|---|
| OTTER PRODUCTS LLC; TREEFROG DEVELOPMENTS, INC. d/b/a LIFEPROOF, | Case No. 2:14-cv-00141-ODW(ASx) |
| Plaintiffs, | **ORDER GRANTING APPLICATION FOR DEFAULT JUDGMENT AGAINST DEFENDANT ACE COLORS FASHION, INC. [30]** |
| v. | |
| ACE COLORS FASHION, INC.; ELECTRONICOS; SHAYNA'S CELL PHONE ACCESSORIES; VANESSA ACCESSORIES; DOES 1–10, inclusive, | |
| Defendants. | |

## I.   INTRODUCTION

Plaintiffs Otter Products, LLC ("OtterBox") and Treefrog Developments, Inc. ("LifeProof") discovered that Defendant Ace Colors Fashion was selling goods bearing Plaintiffs' registered trademarks without their authorization.  Plaintiffs filed suit.  After being served with process, Ace Colors Fashion failed to answer or otherwise respond.  The Clerk of Court accordingly entered default, and Plaintiffs moved for default judgment.  After considering the merits of Plaintiffs' claims, the Court **GRANTS** the Application for Default Judgment and awards OtterBox and

LifeProof a total of $35,000.00 in statutory damages along with a permanent injunction against Ace Colors Fashion.[1]

## II. FACTUAL BACKGROUND

Founded in 1998, OtterBox is a Colorado limited-liability company with its principal place of business in Colorado. (Compl. ¶¶ 1, 14.) OtterBox is a leading retailer of protective cases, peripherals, and accessories for electronic devices and computers. (*Id.* ¶ 15.) The company makes protective carrying cases for a wide variety of electronic products, including cell phones and tablet computers. (*Id.* ¶ 16.) OtterBox has earned several local and national consumer awards and has been featured in media reports about consumer electronics products. (*Id.* ¶¶ 18–19.)

OtterBox owns federally registered and common-law trademarks, including those listed in Figure 1. (*Id.* ¶ 20.) It has spent significant resources developing its products and marketing them in print and Internet advertising. (*Id.* ¶¶ 21–22.)

**Figure 1**

| Depiction of Trademark | Application/ Registration No. | Goods and Services |
|---|---|---|
| OTTER BOX | 2,287,619 | Non-metal, water-tight containers for outdoors recreational use |
|  | 3,791,318 | Protective cases for handheld electronic devices |
| OTTER BOX | 3,788,535 | Protective cases for handheld electronic devices |
| OTTERBOX | 3,788,534 | Protective cases for handheld electronic devices |
| DEFENDER SERIES | 3,623,789 | Protective cases for interactive, handheld electronic devices |

/ / /

/ / /

[1] After carefully considering the papers filed with respect to this Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

Treefrog Developments, Inc. is a Delaware corporation doing business as LifeProof.  (*Id.* ¶ 2.)  LifeProof is a designer, manufacturer, distributor, and seller of all-protective cases and related accessories for mobile devices.  (*Id.* ¶ 23.)  Its products provide protection against water, dirt, snow, and shock.  (*Id.* ¶¶ 23–24.)  The company has spent substantial time, money, and effort developing consumer recognition and awareness of the LifeProof brand, including through national and international advertising.   (*Id.* ¶ 25.)   LifeProof is the exclusive owner federal trademark Registration No. 4,057,201 for "LIFEPROOF."  (*Id.* ¶ 26.)

On October 17, 2013, Plaintiffs' investigator visited Defendant Ace Colors Fashion at 1001 Maple Avenue, Suite 107, Los Angeles, California 90015.  (Perez Decl. ¶ 2.)  The investigator inquired about LifeProof cases for an iPhone 5, and a store associate retrieved five samples from the display wall.  (Perez Decl. Ex. 1.)  The investigator also observed six OtterBox Defender Series cases for the iPhone 5 on display next to the LifeProof cases.  (*Id.*)  He purchased one of each case for $35.00 apiece.  (*Id.*; *see also* Ex. 2 (depicting photographs of the purchased cases).)  Plaintiffs inspected the products and determined that they were not authentic.  (Compl. ¶ 13.)

On January 7, 2014, OtterBox and LifeProof filed suit against, among others, Ace Colors Fashion alleging eight federal and state trademark-infringement related claims.  (ECF No. 1.)  Plaintiffs served Ace Colors Fashion on January 20, 2014.  (ECF No. 10.)  Hearing no response from Defendant, the Clerk of Court entered default on March 14, 2014, per Plaintiffs' request.  (ECF No. 25.)  Plaintiffs thereafter moved for entry of default judgment.  That Application is now before the Court for decision.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) authorizes a district court to grant default judgment after the Clerk enters default under Rule 55(a).  Local Rule 55-1 requires that the movant submit a declaration establishing (1) when and against which party default was entered; (2) identification of the pleading to which default was entered;

(3) whether the defaulting party is a minor, incompetent person, or active servicemember; and (4) that the defaulting party was properly served with notice.

A district court has discretion whether to enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Upon default, the defendant's liability generally is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

In exercising its discretion, a court must consider several factors, including (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## IV.   DISCUSSION

OtterBox and LifeProof move for entry of default judgment against Ace Colors Fashion on their trademark-infringement claim. The Court finds that Plaintiffs have established that Ace Colors Fashion willfully infringed Plaintiffs' registered trademarks, thus entitling them to $35,000.00 in statutory damages and a permanent injunction.

### A.   Notice

On January 20, 2014, Plaintiffs' process server delivered a copy of the summons and Complaint to Jian Maharti, the person in charge at Ace Colors Fashion. (ECF No. 10.) The Court therefore finds that Plaintiffs properly served Defendant under Rule 4(e)(2)(C).

/ / /

/ / /

4

**B.** *Eitel* **factors**

OtterBox and LifeProof only move for entry of default judgment against Ace Colors Fashion on their federal trademark-infringement claim. To establish a trademark-infringement claim, a plaintiff must establish that the defendant is using a mark "confusing similar" to a valid, protectable trademark owned by the plaintiff. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999). In *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003), the Ninth Circuit set forth eight factors a court should consider in determining whether two marks are confusingly similar.

But the Court need not wade through the *Sleekcraft* thicket, because "in cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination . . . because counterfeit marks are inherently confusing." *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) (internal quotation marks omitted); *see also Brookfield Commc'ns*, 174 F.3d at 1056 (noting that virtually identical marks are inherently confusingly similar).

There is no question that the goods at issue here are "counterfeit" in the sense that they masquerade as genuine OtterBox and LifeProof products but were not made or authorized by Plaintiffs. This is not a case where a defendant has employed a mark that is similar but not identical to the plaintiff's registered mark; rather, Ace Color Fashions has wholly appropriated Plaintiffs' trademarks without permission, thereby rendering them liable for trademark infringement.

**C.   Remedies**

Plaintiffs request $100,000.00 in statutory damages against Ace Colors Fashion and a permanent injunction.

*1.   Statutory damages*

Under 15 U.S.C. § 1117(c), a court may award statutory damages between $1,000 and $200,000 per counterfeit mark per type of goods or services sold or

offered for sale in the case of trademark infringement.  But if the court finds that the infringement was "willful," the court may award up to $2,000,000 per counterfeit mark per type of goods or services sold or offered.  *Id.* § 1117(c)(2).  The Ninth Circuit has held that on default, a district court must accept a plaintiff's willful-infringement allegations as true.  *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008).

In determining what amount of statutory damages to award, the Ninth Circuit has repeatedly expressed a deterrence policy, that is, the damages award should make "deliberate acts of trade-mark infringement unprofitable."  *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 123 (9th Cir. 1968); *see also Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993); *Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1275 (9th Cir. 1982).

Plaintiffs argue that one cannot determine the profits Ace Colors Fashion reaped or the losses Plaintiffs incurred as the result of the infringement, because Ace Colors Fashion failed to appear and present its sales data.  But Plaintiffs' investigator observed 11 counterfeit units for sale at the business.

Where there's smoke there's fire.  While Plaintiffs' investigator only observed 11 infringing units for sale, it is likely that Ace Colors Fashion has sold, is selling, and will sell many more units that infringe upon Plaintiffs' registered marks.  It is impossible for the Court to assign a statutory-damages award with precision.  But that is not what Congress has asked.  Rather, the award is left up to the Court's sound discretion after considering all relevant factors—including the willfulness allegation which the Court must accept as true at this stage.

The Court finds that the $100,000 award Plaintiffs request is excessive in light of the limited scope of circumstances presented to the Court.  But the Court does find that given the demonstrated strength of the OtterBox and LifeProof marks along with the Ninth Circuit's deterrence policy, the Court must award statutory damages that will adequately discourage Ace Colors Fashion and other businesses like it from

1  future infringement.  The Court accordingly awards Plaintiffs a total of $35,000.00 in

2  statutory damages for willful trademark infringement as authorized by 15 U.S.C.

3  § 1117(c)(2).

4      *2.    Permanent injunction*

5      Plaintiffs also request that the Court issue a permanent injunction against Ace

6  Colors Fashion.

7      The Lanham Act empowers a court to grant injunctions "according to the

8  principles of equity and upon such terms as the court may deem reasonable" to

9  prevent further trademark infringement.  15 U.S.C. § 1116(a); *Philip Morris USA, Inc.*

10  *v. Castworld Prods., Inc.*, 219 F.R.D. 494, 502 (C.D. Cal. 2003); *PepsiCo, Inc. v. Cal.*

11  *Sec. Cans*, 238 F. Supp. 2d 1172, 1178 (C.D. Cal. 2002).  For a court to issue a

12  permanent injunction, a plaintiff must demonstrate "(1) actual success on the merits;

13  (2) a likelihood of irreparable injury if injunctive relief is not granted; (3) a balance of

14  hardships favoring Plaintiff; and (4) that an injunction will advance the public

15  interest."  *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1084 (C.D.

16  Cal. 2012) (granting a permanent injunction in a trademark-infringement action).

17      The Court has already determined that OtterBox and LifeProof succeeded on

18  the merits of their infringement claim.  Plaintiffs will also suffer irreparable harm if

19  the Court does not issue an injunction, as Ace Colors Fashion is likely to continue to

20  sell infringing goods and consequently benefit from the goodwill Plaintiffs have spent

21  substantial money establishing for their marks.  Neither is there any indication that

22  Defendant will suffer any prejudice; it simply must stop selling infringing goods.

23  Finally, the public will benefit from the Court enjoining Ace Colors Fashion.  As the

24  Ninth Circuit stated,

25      In addition to the harm caused the trademark owner, the consuming

26      public is equally injured by an inadequate judicial response to trademark

27      infringement.  Many consumers are willing to pay substantial premiums

28      for particular items which bear famous trademarks based on their belief

1       that such items are of the same high quality as is traditionally associated

2       with the trademark owner.  As a result of this trademark infringement the

3       consuming public is denied the benefit of their bargains and the

4       reputation and goodwill of the trademark owner is accordingly harmed.

5 *Playboy Enters.*, 692 F.2d at 1275.

6       The Court has also reviewed the language of the proposed permanent injunction

7 submitted by Plaintiffs and finds it appropriately tailored to this case's circumstances.

8 (*See* ECF No. 30-5.)  The Court will therefore issue the proposed injunction along

9 with the default judgment.

## V.    CONCLUSION

11       For the reasons discussed above, the Court **GRANTS** OtterBox and LifeProof's

12 Application for Default Judgment against Defendant Ace Colors Fashion.  (ECF

13 No. 30.)  The Court thus awards Plaintiffs a total of **$35,000.00** in statutory damages

14 and grants Plaintiffs a permanent injunction.  A default judgment and injunction will

15 issue.

16       **IT IS SO ORDERED.**

17

18       April 15, 2014

19

20 _____

21                 **OTIS D. WRIGHT, II**

22         **UNITED STATES DISTRICT JUDGE**