O

# United States District Court
# Central District of California

| | |
|---|---|
| OTTER PRODUCTS LLC; TREEFROG DEVELOPMENTS, INC. d/b/a LIFEPROOF,<br><br>            Plaintiff,<br><br>      v.<br><br>ACE COLORS FASHION, INC.; ELECTRONICOS; SHAYNA'S CELL PHONE ACCESSORIES; VANESSA ACCESSORIES; DOES 1–10, inclusive,<br><br>            Defendants. | Case No. 2:14-cv-00141-ODW(PJWx)<br><br>**ORDER GRANTING APPLICATION FOR DEFAULT JUDGMENT AGAINST DEFENDANT ELECTRONICOS [60]** |

## I.   INTRODUCTION

Plaintiffs Otter Products, LLC ("OtterBox") and Treefrog Developments, Inc., dba LifeProof ("LifeProof") discovered that Defendant Electronicos was selling unauthorized goods bearing Plaintiff's registered trademarks. Plaintiffs filed suit. Despite proper service, Electronicos failed to answer or otherwise respond to this litigation. The Court Clerk entered default, and Plaintiffs moved for default judgment on their trademark claim.

For the reasons discussed below, the Court **GRANTS** Plaintiff's Application for Default Judgment against Defendant Electronicos and awards OtterBox and LifeProof a total of $45,000.00 in statutory damages along with a permanent injunction against Electronicos.[1] (ECF No. 60.)

## II.  FACTUAL BACKGROUND

OtterBox is a Colorado limited-liability company with its principal place of business in Colorado. (Compl. ¶ 1.) OtterBox is a leading retailer and distributor of protective cases and accessories for portable electronic devices, e.g., iPhones, iPads, and Kindle readers. (*Id*. ¶¶ 15, 16.) The company and its various products have received local and national consumer awards and have garnered extensive media coverage. (*Id*. ¶¶ 18, 19.) OtterBox is the exclusive owner of federally registered and common-law trademarks ("OtterBox Mark"). OtterBox has spent considerable resources in developing consumer recognition of and goodwill towards its brand. (*Id*. ¶ 21).

Plaintiff Treefrog Development, Inc. dba LifeProof ("LifeProof") is a Delaware corporation with its principal place of business in California. (*Id*. ¶ 2.) LifeProof is also a leading designer, manufacturer, distributor, and seller of protective cases and accessories for electronic mobile devices, e.g., iPhones and iPads. (*Id*. ¶ 23.) LifeProof is the exclusive owner of federally registered and common-law trademarks, including Registration No. 4,057,201 for "LIFEPROOF" ("LifeProof Mark"). (*Id*. ¶¶ 25, 26.) LifeProof has spent considerable resources developing consumer recognition through national and international marketing and the development of trade dress and copyrighted material. (*Id*. ¶ 25.)

On October 17, 2013, the Plaintiffs' investigator Joseph Perez visited Electronicos at two separate locations: 936 South Maple Street, Suite #20, Los Angeles, and 1000 South Maple Avenue, Suite #7, Los Angeles. (Perez Decl. ¶ 2,

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

2

Ex. 2.) At the first location, Perez identified approximately 25 LifeProof cases on display, and he procured one "orange LifeProof fre case" for $25.00. (*Id.* Ex. 2.) At the second location, Perez identified approximately 40 LifeProof cases on display and he procured one "red LifeProof fre case" for $20.00 after some haggling. (*Id.*) Said cases were later inspected by Plaintiffs and determined to be counterfeit products. (*Id.*)

On January 7, 2014, Plaintiffs filed this action against Electronicos and several others under eight alternative theories of relief, including federal trademark infringement. (ECF No. 45.) Electronicos was served with a Summons and Complaint on January 20, 2014. (ECF No. 11.) Electronicos was again served with a Summons and Complaint on March 14, 2014, with personal service on Pedro Perez, the person-in-charge at Electronicos. (ECF No. 26.) The Court noted that Plaintiffs did not properly serve Electronicos under Federal Rule of Civil Procedure 4(e). (ECF No. 52.). On June 20, 2014, Plaintiff's reserved Electronicos. (ECF No. 53.) On July 24, 2014, the Clerk subsequently entered default against Electronicos. (ECF No. 57.) Plaintiffs' Application for Entry of Default Judgment is now before the Court for decision. (ECF No. 60.)

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) authorizes a district court to grant default judgment after the Clerk enters default under Rule 55(a). Local Rule 55-1 requires that the movant submit a declaration establishing (1) when and against which party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor, incompetent person, or active service member; and (4) that the defaulting party was properly served with notice.

A district court has discretion whether to enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Upon default, the defendant's liability generally is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–

19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

In exercising its discretion, a court must consider several factors, including (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## IV.   DISCUSSION

The Court finds that all of the *Eitel* factors weigh in favor of granting default judgment. The Court therefore awards Plaintiffs $45,000.00 in statutory damages.

**A.   Notice**

Under the Federal Rules of Civil Procedure, an individual may be served in a judicial district of the United States by following state law for serving a summons of the state where the district court is located. Fed. R. Civ. P. § 4(e)(1). Under California law, a party is properly served by leaving a copy of the summons and the complaint at the individual's "usual place of business" in the presence of "a person apparently in charge of his or her office, [or] place of business . . . at least 18 years of age." Cal. Civ. Proc. Code § 415.20(b). In such a case, the plaintiff must send a copy of the summons and complaint via first-class mail "to the person to be served at the place where a copy of the summons and complaint were left." *Id*

On June 20, 2014, Plaintiffs' process server served a copy of the Summons and Complaint to Electronicos's place of business and also mailed copies of the documents to the business. (ECF No. 53.) This was the second time that Plaintiffs served Electronicos, though the Court found that the first attempt at service did not strictly comply with California law. Plaintiffs have also served Electronicos with both applications for entry of default and applications for entry of default judgment. There

is thus little concern that Electronicos is unaware of this action. The Court accordingly finds that the Plaintiffs properly served Electronicos under Rule 4(e)(1) and Code of Civil Procedure section 415.20(b).

**B.** *Eitel* **Factors**

Plaintiffs move for entry of default judgment against Electronicos for their claims of trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114. The Court finds that the *Eitel* factors weigh in favor of granting default judgment.

*1. Possibility of Prejudice to the Plaintiff*

The first *Eitel* factor examines whether the plaintiff will be prejudiced if default judgment is not granted against the Defendant. *Eitel*, 782 F.2d at 1472. A plaintiff suffers prejudice if there is no recourse for recovery absent default. *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). Electronicos has failed to appear or to offer a defense in this case. (ECF No. 56.) As litigation cannot move forward, the only way for Plaintiff to obtain relief is through default judgment. This factor accordingly favors default judgment.

*2. Merits of Plaintiff's Substantive Claim and Sufficiency of the Complaint*

The second and third *Eitel* factors require that the plaintiff "state a claim on which the [plaintiff] may recover." *Castworld*, 219 F.R.D. at 499 (quoting *PepsiCo*, 238 F. Supp. at 1175). To succeed under the Lanham Act, the plaintiff must show that the defendant used the plaintiff's own protectable trademark without consent in commerce for the sale, use, or advertising of any product and in a way that is likely to cause confusion, mistake, or to deceive customers. 15 U.S.C. § 1114(a)(1); *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999).

Generally, the court applies a multifactor test to determine the likelihood of confusion. *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 807 (9th Cir. 2003). But such an examination is unnecessary because virtually identical marks, like

the counterfeit marks at issue here, are "inherently confusing." *Philip Morris USA, Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004); *Brookfield*, 174 F.3d at 1056.

Plaintiffs have demonstrated the necessary elements for trademark infringement under the Lanham Act. Plaintiffs identify in their Complaint LifeProof's exclusive ownership of the LifeProof Mark and lack of consent to Electronicos's use of the mark. (Compl. ¶¶ 26, 44.) Additionally, Plaintiffs plead Electronicos's illicit use of the LifeProof Mark in connection with the sale of multiple units of counterfeit products. (*Id*. ¶¶ 30–32, 35–38; Perez Decl. Ex. 1.) The Court presumes that the goods found at Electronicos are confusing within the meaning of the Lanham Act because they are "counterfeits"—goods packaged as genuine OtterBox and LifeProof products but not actually made or authorized by Plaintiffs. (Compl. ¶¶ 30, 32, 33). The fact that the infringing marks is an exact copy of Plaintiffs' mark establishes the likelihood of confusion. Electronicos wholly appropriated Plaintiffs' registered mark without permission and, as such, is liable for trademark infringement. For these reasons, the second and third *Eitel* factors favor entry of default judgment.

### 3. *Sum of Money at Stake*

The fourth *Eitel* factor examines whether the sum of money at stake is proportionate to the harm caused by the defendant's actions. *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010). Under 15 U.S.C. § 1117(c)(2), a court may award statutory damages up to $2,000,000 per counterfeit mark if the infringement was "willful." Plaintiffs requested $100,000 in statutory damages against Electronicos. (Mot. 10.) Plaintiffs' request for relief is well within the parameters Congress set forth in 15 U.S.C. § 1117(c)(2). While not necessarily the amount the Court awards, the damages requested are proportionate to Electronicos's wrongful conduct and the harm caused.

/ / /

/ / /

#### 4. *Possibility of Disputed Material Facts*

The fifth *Eitel* factor examines whether there is likelihood of a dispute of material facts. *Eitel*, 782 F.2d at 1472. When deciding whether to grant default judgment, the court accepts all factual allegations that are well pleaded in the complaint as true. *Televideo*, 826 F.2d at 917–18. As such, when the plaintiff pleads the facts necessary for the plaintiff to prevail on their claims, there is little possibility of dispute over material facts. *Castworld*, 219 F.R.D. at 498.

In the present case, Plaintiffs allege all the facts necessary to prevail on their claim. The Court has also reviewed images of the products bearing the infringing marks and notes the identity between the infringing marks and the registered ones. Because a dispute of material facts is unlikely, this factor favors default judgment.

#### 5. *Possibility of Excusable Neglect*

The sixth *Eitel* factor considers whether the defendant's actions may be caused by excusable neglect. *Eitel*, 782 F.2d at 1472. There is very limited possibility of excusable neglect when the defendant is properly served and is aware of the pending litigation. *Wecosign, Inc., v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012). Plaintiffs properly served Electronicos on June 20, 2014, and Defendant has failed to respond to the Complaint in any way. Plaintiffs have also served Electronicos with notice of their applications for entry of default and default judgment. (ECF No. 46; ECF No. 60.) As Electronicos has received no less than six notices regarding this litigation, there is very little possibility of excusable neglect. Therefore, this factor favors default judgment.

#### 6. *Policy for Deciding Cases on the Merits*

There is a strong policy for deciding cases on their merits "whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But a defendant's failure to appear or to respond makes a decision on the merits "impossible." *Wecosign*, 845 F. Supp. 2d at 1083. As Electronicos has failed to respond to Plaintiffs' Complaint, this factor favors default judgment. (ECF. No. 56.)

**C.     Remedies**

Plaintiffs requested $100,000.00 in statutory damages against Electronicos and a permanent injunction. For the reasons below, the Court awards Plaintiffs $45,000.00 and grants Plaintiffs' request for a permanent injunction.

*1.     Statutory Damages*

After a finding of trademark infringement, a court may award statutory damages between $1,000 and $200,000 per counterfeit mark per type of good or service sold or offered in sale. 15 U.S.C. § 1117(c). Alternatively, if the court finds "willful" trademark infringement, the court may award up to $2,000,000 per counterfeit mark per type of goods or services sold or offered. *Id.* § 1117(c)(2). On default judgment, a district court must accept the plaintiff's willful-infringement allegations as true. *Derek Andrews, Inc., v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008).

Statutory damages make deliberate acts of trademark infringement unprofitable, thereby supporting the Ninth Circuit's deterrence policy. *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 123 (9th Cir. 1968); *see also Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1275 (9th Cir. 1982) (explaining that trademark infringement should be deterred because "inadequate judicial response" harms both the trademark owner and the consuming public, who unwittingly pays premiums for lower quality goods). Nevertheless, deterrence measures are subject to "principles of equity" and are meted out under the "wide scope" of the district court's discretion. *Maier Brewing*, 390 F.2d at 121.

Plaintiffs argue that neither the profits Electronicos realized nor the losses incurred by Plaintiffs as a result of the infringement can be determined with precision since Electronicos failed to appear and present relevant sales and profit data. (Mot. 8.) The only exact accounting of counterfeit units comes from the Plaintiffs' investigator's observation of 65 counterfeit units and the subsequent sale of two of those units. (Perez Decl. Ex. 2.) It is unclear how many units were sold, for what

amount, and for how long. Still, observed infringement is indicative of further wrongful behavior. While Plaintiffs' investigator only observed 65 counterfeit units for sale, it is likely that Electronicos has sold, is selling, and will sell many more units that infringe upon Plaintiffs' registered marks.

A lack of complete information makes it impossible for the Court to assign a damages award with precision. However, the Lanham Act does not require precision. The Court's wide scope of discretion requires only that statutory damages be awarded subject to principles of equity and all relevant factors, including willfulness allegations that must be accepted as true at this stage.

The Court finds that the $100,000 award Plaintiffs request is excessive in light of the circumscribed infringement appearing from the limited facts available to the Court. But given the Ninth Circuit's deterrence policy and the demonstrated strength of the OtterBox and LifeProof marks, the Court must award statutory damages that adequately discourage Electronicos and other businesses like it from future infringement. The Court also notes that Electronicos's refusal to respond to this litigation despite being served numerous times serves to aggravate Defendant's liability. The Court accordingly awards Plaintiffs a total $45,000.00 in statutory damages for willful trademark infringement as authorized by 15 U.S.C. § 1117(c)(2).

  2. *Permanent Injunction*

Under the Lanham Act, a district court may grant an injunction in accordance with "principles of equity" and "upon such terms as the court may deem reasonable" to prevent further violations of the mark. 15 U.S.C. § 1116(a); *Castworld*, 219 F.R.D. at 502; *PepsiCo*, 238 F. Supp. 2d at 1177. Permanent injunctions have been granted in cases where a defendant is aware of the pending litigation but has not appeared in the action. *Castworld*, 219 F.R.D. at 502; *PepsiCo*, 238 F.Supp.2d at 1178. But a plaintiff is not "automatically" entitled to injunctive relief. *PepsiCo*, 238 F. Supp. 2d at 1177. Injunctive relief is improper in circumstances where it is "absolutely clear" that the wrongful behavior "has ceased and will not begin again." *Id.* at 1177, 1178.

When seeking injunctive relief, a plaintiff must establish "(1) actual success on the merits; (2) a likelihood of irreparable injury if injunctive relief is not granted; (3) a balance of hardships favoring Plaintiff; and (4) that an injunction will advance the public interest." *Wecosign*, 845 F. Supp. 2d at 1084 (granting a permanent injunction in a trademark infringement action); *see Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (granting a preliminary injunction prohibiting sonar in training exercises).

Plaintiffs have adequately established all elements necessary for injunctive relief. First, the Court has already determined that Plaintiffs succeed on the merits of this case. Second, there is a high likelihood of irreparable injury to Plaintiffs, as Electronicos is likely to continue selling counterfeit goods and benefiting from the use of the counterfeit mark. Third, the balance of hardships favors Plaintiffs since there is no indication that Electronicos will be prejudiced in any way—Electronicos need only stop selling counterfeit goods. Finally, in terms of policy, "injunctive relief is the remedy of choice" for trademark infringement as there is no other adequate remedy when a defendant continuously violates a mark. *Century 21 Real Estate Corp. v. Sandin*, 846 F.2d 1175, 1180 (9th Cir. 1988). For those reasons, the Court grants Plaintiffs' request for a permanent injunction against Electronicos.

The Court has also reviewed the language of the proposed permanent injunction submitted by Plaintiffs and finds it appropriately tailored to this case's circumstances. (*See* ECF No. 45-5.) The Court will therefore issue the proposed injunction along with the default judgment.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiffs' Application for Default Judgment Against Defendant Electronicos. (ECF No. 60.) The Court thus awards Plaintiffs a total of $45,000.00 in statutory damages and grants Plaintiffs' request for a permanent injunction. A default judgment and injunction will issue separately.

**IT IS SO ORDERED.**

August 21, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**